## W. K. BUCKLEY, Inc., v. COMMISSONER OF INTERNAL REVENUE.
### No. 17, Docket 20212.

Circuit Court of Appeals, Second Circuit.
Nov. 18, 1946.

Petitioner is a New York corporation engaged in the business of selling "Buckley's Mixture," a cough remedy. It keeps its accounts and makes its income and excess profits tax returns on an accrual basis. The return in question is that filed for the taxable year ended July 31, 1940.

During the taxable year, taxpayer sold goods in Australia and New Zealand, from which it derived profits of $80,807.20. These profits were subject to Australian and New Zealand income taxes aggregating $20,005.26, leaving a net profit of $60,801.94 from sales in these countries. During the taxable year, Buckley received in cash only $19,041.84 of this amount; the balance of the net profits, $41,760.10 was impounded in Australia and New Zealand, since those countries restricted the transmission of funds abroad. Taxpayer, assuming that it was not required to include as part of its gross taxable income the $41,760.10 of impounded foreign profits, included only the $19,041.84 received by it in cash, which amount, plus its United States income, resulted in a gross taxable income of $56,571.62. As deductions to which the taxpayer was otherwise entitled amounted to $57,002.95, the return showed a loss of $431.33, and no tax payable.

Upon the audit of taxpayer's return, the Commissioner determined that the impounded portion of the Australian and

New Zealand profits, less the foreign taxes on those profits, should have been included in the computation of gross income. With certain minor adjustments, this resulted in a net addition to taxpayer's gross taxable income of $39,539.65, and a deficiency in income and excess profits taxes of $11,321.76.

Taxpayer upon notification on August 25, 1943 of the proposed deficiency promptly filed a protest against the assessment of the deficiency, in which it asked that the foreign taxes be allowed as a credit against the deficiency, rather than as a deduction from gross income. The request was made in the following language: "Accordingly, we wish to signify at this time that it is our desire to have the foreign taxes for the year ended July 31, 1940 taken as a credit instead of as a deduction and request therefore a reassessment of our tax for the year on that basis." Taxpayer did not file an amended return for the taxable year, nor did it file form 1118, required by the Regulations to be filed by those wishing to take advantage of the provision for a tax credit.[1] The Tax Court sustained the Commissioner.

The inclusion of the impounded foreign income as a part of the gross taxable income is not in dispute, nor is there any dispute as to the character or amount of the Australian and New Zealand income taxes. Neither is there any suggestion that the taxpayers were guilty of fraud or intention to evade their tax liability.

The applicable statutory provisions are §§ 23(c) and 131(a) of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev.Code, § 23(c) and § 131(a), note, which, so far as they are relevant, are set out in the margin.[2]

Nixon, Hargrave, Middleton & Devans, of Rochester, (Scott Stewart, Jr. and Thomas C. Taylor, both of Rochester, N. Y., of counsel), for petitioner.

J. P. Wenchel, of Washington, D. C. (Douglas W. McGregor, of Houston, Tex., Sewall Key, J. Louis Monarch and S. Dee

[1] "Regulation 103, Sec. 19.131-3. *Conditions of Allowance of Credit.*—If the taxpayer signifies in his return his desire to claim credit for income, war-profits, or excess-profits taxes paid other than to the United States, the income tax return must be accompanied by Form 1116 in the case of an individual, and by Form 1118 in the case of a corporation. The form must be carefully filled in with all the information there called for and with the calculations of credits there indicated, and must be duly signed and sworn to or affirmed. If credit is sought for taxes already paid the form must have attached to it the receipt for each such tax payment. If credit is sought for taxes accrued, the form must have attached to it the return on which each such accrued tax was based. This receipt or return so attached must be either the original, a duplicate original, a duly certified or authenticated copy, or a sworn copy. In case only a sworn copy of a receipt or return is attached, there must be kept readily available for comparison on request the original, a duplicate original, or a duly certified or authenticated copy. If the receipt or the return is in a foreign language, a certified translation thereof must be furnished by the taxpayer. Any additional information necessary for the determination under section 119 of the amount of income derived from sources without the United States and from each foreign country shall, upon the request of the Commissioner, be furnished by the taxpayer."

[2] § 23. "In computing net income there shall be allowed as deductions: * * *

(c) Taxes generally. * * * Taxes paid or accrued within the taxable year, except— * * *

(2) income, war-profits, and excess-profits taxes imposed by the authority of any foreign country or possession of the United States; but this deduction shall be allowed in the case of a taxpayer who does not signify in his return his desire to have to any extent the benefits of section 131 (relating to credit for taxes of foreign countries and possessions of the United States); * * *."

§ 131(a). "Allowance of credit. If the taxpayer signifies in his return his desire to have the benefits of this section, the tax imposed by this chapter, except the tax imposed under section 102, shall be credited with:

(1) Citizen and domestic corporation. In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States * * *."

Hanson, all of Washington, D. C., of counsel), for respondent.

Before L. HAND, SWAN and FRANK, Circuit Judges.

FRANK, Circuit Judge.

The question for decision is whether the taxpayer made a binding election to claim the foreign taxes as a deduction from gross income under § 23(c) (2) so that it could not later use them as a credit under § 131(a) (1) after the Commissioner audited the return and determined a deficiency, despite the fact that before the audit taxpayer believed that it owed no tax under either of the alternative methods, so that it then believed that it made no practical difference whether the foreign taxes were treated as a deduction or as a credit.

█ The Tax Court held that the allowance of credit for foreign taxes is conditioned upon an election which must be indicated in the original return or an amended return filed within the time allowed for the filing of an original return, and that failure so to indicate forfeits any right to a credit under § 131(a). That section, however, was not intended to confer an ordinary tax exemption; it was meant to encourage and facilitate foreign trade, Burnet v. Chicago Portrait Co., 285 U.S. 1, 52 S.Ct. 275, 76 L.Ed. 587, and to eliminate the evils of double taxation, American Chicle Co. v. United States, 316 U.S. 450, 62 S.Ct. 1144, 86 L.Ed. 1591. To achieve these ends, Congress gave the taxpayer the benefit of a choice between the two alternative methods of treating the foreign tax. It seems to us sufficient for the taxpayer to indicate its election when it appears that a tax is due and when, therefore, an election first has significance.

█ The matter was extensively discussed by the Sixth Circuit in Gentsch v. Goodyear Tire & Rubber Co., 151 F.2d 997, 1001, a closely analogous case. We accept the reasoning of that opinion. There the tax return for 1932, filed in 1933, showed a net loss and made no claim for credit for foreign taxes. Upon audit, the Com-

missioner determined a deficiency, and the taxpayer, in 1940, filed an amended return claiming such a credit. The court held that the taxpayer could not be said to have exercised its option in its 1933 return. The Commissioner argues that the instant case is distinguishable because here taxpayer filed no amended return, and expressed its election solely in its protest against the Commissioner's "sixty-day letter." But in the Goodyear Tire case, the Court said that "A redetermination of tax liability by the Commissioner is, for practical purposes, an amendment of the taxpayer's return * * *" With that statement we agree. We believe that the letter of protest asserting an election which was filed shortly after the redetermination, when taken in conjunction with the redetermination itself, may be regarded as the equivalent of an amended return manifesting an election.

█ Nor do we think it fatal that the taxpayer did not comply with the regulation which requires the filing of form 1118. The purpose of that form is to give the tax officials full information about the foreign taxes. When they obtain that information by their audit, as they did here, compliance with the regulation serves no useful purpose. There are instances in which strict compliance with a regulation is essential to the enforcement of a system of self-assessed income taxes. But "The function of the regulation is to facilitate research";[3] and after the officials, having done the research, are in possession of all the requisite information, no practical administrative considerations demand that the form be filed. Angelus Milling Co. v. Commissioner of Internal Revenue, 325 U.S. 293, 65 S.Ct. 1162, 89 L.Ed. 1619, is not apposite; there obvious confusion resulted because of taxpayer's failure to comply, but here there was none. No more in point is Commissioner of Internal Revenue v. Lane-Wells Co., 321 U.S. 219, 64 S.Ct. 511, 88 L.Ed. 684. It dealt with the personal holding company tax, 26 U.S.C.A.Int.Rev.Code, § 500, and a regulation specifically calling for a separate return supplying the needed informa-

---

[3] Cardozo, J., in United States v. Memphis Cotton Oil Co., 288 U.S. 62, 71, 53 S.Ct. 278, 281, 77 L.Ed. 619.

tion; the Court pointed out that the single return filed failed to show the facts on which personal holding company liability was predicated. Here, in the circumstances, the failure to comport with the regulation was the omission of a mere formality. Perhaps it is sometimes justifiable to discipline young children for infraction of rules which have no practical importance. But we think that Congress did not want to deal with citizens as if they were still in the nursery.

Section 131(a) was intended, we think, to prevent a taxpayer, fully cognizant of the facts when making its return, from subsequently changing its position, but not to hold a taxpayer to a choice made when unaware that its choice had practical consequences. That such was the legislative purpose is emphasized by § 131 (d) which does preclude a shift of position by a taxpayer, knowingly electing to claim a credit, as to a cash or accrual basis.

Reversed.