121 T.C. No. 19

UNITED STATES TAX COURT

FORTUNATO J. MENDES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16032-95.                    Filed December 11, 2003.

P has been continuously incarcerated since June 17,
1988.  For P's 1988 taxable year, R (1) determined a tax
deficiency based upon amounts reported on information
returns as having been paid to P during that year, (2)
imposed the 10-percent additional tax under sec. 72(t)(1),
I.R.C., and (3) determined that P was subject to additions
to tax under secs. 6651(a)(1), 6653(a)(1), and 6654, I.R.C.
More than 2 years after R issued the notice of deficiency, P
filed a 1988 return in which he reported the income from the
1988 information returns and listed deductions and
dependency exemptions, which, in total, exceeded the
reported income, thereby resulting in a zero tax liability
for 1988.  P now denies (1) receipt of a portion of the
income reported on his 1988 return and (2) liability for the
10-percent additional tax under sec. 72(t)(1), I.R.C.  R
denies that P is entitled to any of the claimed deductions
and dependency exemptions.

1.  <u>Held</u>:  R's adjustments to income and disallowance of deductions and dependency exemptions claimed by P are sustained.

2.  <u>Held</u>, <u>further</u>, R's imposition of the 10-percent additional tax under sec. 72(t)(1), I.R.C., is sustained.

3.  <u>Held</u>, <u>further</u>, R's imposition of additions to tax under secs. 6651(a)(1), 6653(a)(1), and 6654, I.R.C., are sustained.  P's 1988 return, filed more than 2 years after R's issuance of the notice of deficiency, is disregarded for purposes of computing the "required annual payment" under sec. 6654(d)(1)(B)(i), I.R.C.

<u>Fortunato J. Mendes</u>, pro se.

<u>Wilton A. Baker</u>, for respondent.

HALPERN, <u>Judge</u>:  By notice of deficiency dated May 3, 1995 (the notice), respondent determined a deficiency in and additions to petitioner's Federal income tax for calendar year 1988 (sometimes, the audit year) as follows:

| | Additions to Tax | | |
| Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6654 |
| --- | --- | --- | --- |
| $8,487 | $2,122 | $424 | $484 |

The adjustments giving rise to the deficiency are respondent's inclusion in income of amounts reported on information returns as having been paid to petitioner during 1988 (sometimes, the income items), and his imposition of the 10-percent additional tax on early distributions from qualified retirement plans, offset by his allowance of the standard deduction and one personal exemption.  In addition, respondent

denies petitioner's claim, raised at trial, to deductions, losses, and additional personal exemptions on a 1988 Form 1040, U.S. Individual Income Tax Return (the 1988 return), that petitioner filed on or about May 14, 1997, more than 2 years after the notice was issued.

The issues for decision are whether, for the audit year, petitioner: (1) must include in gross income $40,347, consisting of dividends, interest, capital gains, and a distribution from a retirement account; (2) is entitled to itemized deductions of $11,850; (3) sustained a deductible loss of $6,724 in connection with his law practice; (4) sustained deductible losses totaling $29,455 in connection with the management of certain rental real property; (5) is entitled to dependency exemptions for three children (the dependency exemptions); (6) is liable for the 10-percent additional tax on early distributions from qualified retirement plans under section 72(t); and (7) is liable for additions to tax under (A) section 6651(a)(1) for failure to timely file the 1988 return, (B) section 6653(a)(1) for negligence, and (C) section 6654 for failure to pay estimated income tax.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and

Procedure. All dollar amounts have been rounded to the nearest dollar. Petitioner bears the burden of proof. Rule 142(a)(1).[1]

## FINDINGS OF FACT[2]

Some facts are stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

At the time the petition was filed, petitioner was incarcerated at the Maryland House of Corrections in Jessup, Maryland.

Petitioner has been continuously incarcerated since June 17, 1988, the date upon which he was arrested for the murder of an individual who was scheduled to testify against him regarding a cocaine trafficking charge. He was ultimately tried for and convicted of first degree murder and sentenced to life imprisonment with no chance of parole.[3]

---

[1] Sec. 7491, which, under certain circumstances, shifts the burden of proof to the Commissioner, is inapplicable because the examination in this case began before July 22, 1998, the effective date of that section. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

[2] Petitioner has failed to set forth objections to respondent's proposed findings of fact. Accordingly, we conclude that petitioner concedes that respondent's proposed findings of fact are correct except to the extent that petitioner's findings of fact are clearly inconsistent therewith. See Jonson v. Commissioner, 118 T.C. 106, 108 n.4 (2002).

[3] Petitioner had previously been tried for and convicted of distribution of cocaine and carrying a pistol without a license.

Petitioner was a lawyer for 20 years.  He was disbarred on October 23, 1991, as a result of his convictions.

Petitioner paid no taxes and filed no return for the audit year before the issuance of the notice.  The additions to gross income set forth in the notice were reported on information returns (Forms 1099 or, in the case of Merrill Lynch Pierce Fenner & Smith, Inc. (Merrill Lynch), an equivalent tax reporting statement) as follows:

| Payor | Classification | Amount |
|---|---|---|
| Merrill Lynch | Short-term capital gain[1] | $27,573 |
| Bank of New York | Short-term capital gain[1] | 2,802 |
| First Investors Tax Exempt Fund | Interest | 259 |
| Sovran Bank, NA | Interest | 138 |
| Commonwealth Savings & Loan | Interest | 5 |
| Merrill Lynch | Dividends | 540 |
| Raytheon Co. | Dividends | 8 |
| National Bank of Washington | Gross distribution from retirement account | 9,022 |
| Total | | 40,347 |

[1]  The $27,573 was reported by Merrill Lynch as "gross proceeds from dispositions of securities".  Although the information return from Bank of New York is not in evidence, we assume it does the same with respect to the $2,802.  On the 1988 return, petitioner reported both amounts as short-term capital gain; i.e., he failed to report other than a zero basis for either the IBM stock sold by Merrill Lynch or the security sold by Bank of New York.

On or about May 14, 1997, more than 2 years after the notice was issued, petitioner filed the 1988 return.  On Schedules B,

Interest and Dividend Income, and D, Capital Gains and Losses, he listed all of the income items contained in the notice.[4]

On Schedule A, Itemized Deductions, of the 1988 return, petitioner listed the following itemized deductions:

| | |
|---|---|
| Real estate taxes | $1,420 |
| Deductible points (interest) | 10,430 |
| Total | 11,850 |

On Schedule C, Profit or Loss From Business, petitioner listed his principal business as "Lawyer", and, on a cash basis of accounting, showed zero gross receipts and total deductions of $6,724, for a net loss of $6,724.

On Schedule E, Supplemental Income (plus attachments), petitioner listed nine separate rental properties. He reported a loss on each of the properties and, on four of the properties, he reported zero rental income. He reported a total loss of $29,455 with respect to said properties.

Petitioner also claimed four personal exemptions: one for himself and one for each of three children.

The combination of personal exemptions, itemized deductions, and losses resulted in petitioner's reporting zero taxable income and zero tax due.

In the notice, respondent allowed petitioner one personal exemption of $1,950 and the $3,000 standard deduction appropriate

---

[4] In fact, petitioner double counted certain of the income items. Respondent has not sought to add the duplicated income to his proposed adjustment.

for his filing status, married filing separately.  In addition, respondent treated the $9,022 distribution from the National Bank of Washington as a premature distribution from a qualified retirement plan and imposed the 10-percent additional tax ($902) applicable to such distributions under section 72(t).  Respondent also imposed additions to tax under sections 6651(a), 6653(a)(1), and 6654.

OPINION

I.  <u>Amounts Included in Gross Income</u>

A.  <u>Identical Amounts Reported as Income by Petitioner</u>

On the 1988 return, petitioner included in income all of the items that are contained in the notice's adjustment for additional income.  During the trial, however, petitioner stated that he was contesting all but one of the income items: the $138 of interest from Sovran Bank.

It has been held repeatedly that positions taken in a tax return signed by a taxpayer may be treated as admissions.  See <u>Waring v. Commissioner</u>, 412 F.2d 800, 801 (3d Cir. 1969), affg. T.C. Memo. 1968-126; <u>Lare v. Commissioner</u>, 62 T.C. 739, 750 (1974), affd. without published opinion 521 F.2d 1399 (3d Cir. 1975); <u>Kaltreider v. Commissioner</u>, 28 T.C. 121, 125-126 (1957), affd. 255 F.2d 833 (3d Cir. 1958).  As we recently stated in <u>Crigler v. Commissioner</u>, T.C. Memo. 2003-93 (citing the foregoing authorities):  "petitioner * * * cannot * * * disavow * * *

returns [prepared by him] without cogent proof that they are incorrect." As discussed infra in Section I.B. and C., petitioner has failed to furnish such proof.

B. Failure To Challenge Income Adjustments on Brief

Other than making a vague assertion that he "was requires [sic] to and fully complied with the filing of * * * [the 1988 return] consistent with the 1099 information" (which suggests a mistaken belief that such reporting was required even though petitioner disputed the information), on brief, petitioner challenges only one of the income items: the short-term capital gain from the sale of 240 shares of IBM (the IBM stock).[5] If an argument is not pursued on brief, we may conclude that it has been abandoned. See Clajon Gas Co. v. Commissioner, 119 T.C. 197, 213 n.17 (2002); Davis v. Commissioner, 119 T.C. 1 n.1 (2002); Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001); Rybak v. Commissioner, 91 T.C. 524, 566 n.19 (1988).

C. Sale of the IBM Stock--Alleged Theft of Sale Proceeds

Petitioner argues that there is no proof that Merrill Lynch sold the IBM stock at petitioner's request or that petitioner received the proceeds of that sale. During the trial, petitioner acknowledged that the Merrill Lynch tax reporting statement for

_____

[5] During the trial, petitioner admitted that the $9,022 received from the National Bank of Washington constituted a premature distribution from a qualified retirement account. On brief, he challenges only the imposition of the sec. 72(t) 10-percent additional tax on that distribution.

1988, together with the monthly statements for 1988 (all of which were placed in evidence during the trial) (the Merrill Lynch statements) constitute a copy of his 1988 account activity with Merrill Lynch. The monthly statement for June 1988 shows that, on June 17, 1988 (the date of petitioner's arrest and incarceration), petitioner's account was credited with $27,573 representing the proceeds from the sale of the IBM stock (the IBM sale proceeds). It further shows that, after the sale, on June 21, 1988, a check for $22,960 was written on the account and identified as a "withdrawal" from the account.

Whether or not Merrill Lynch sold the IBM stock at petitioner's request, there is no dispute that the stock was in fact sold and that the IBM sale proceeds were credited to petitioner's Merrill Lynch account.

Pursuant to section 61(a)(3), gross income includes "[g]ains derived from dealings in property". Section 1.446-1(c)(1)(i), Income Tax Regs., requires that, "under the cash receipts and disbursements method in the computation of taxable income, all items which constitute gross income * * * are to be included for the taxable year in which actually or constructively received." Section 1.451-2(a), Income Tax Regs., provides that income is constructively received by a taxpayer "in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any

time". Pursuant to that regulation, the IBM sale proceeds were constructively received by petitioner on June 17, 1988, when they were credited to his Merrill Lynch account. Moreover, because petitioner has failed to offer any evidence as to his holding period for or basis in the IBM stock, the entire $27,573 is includable in petitioner's 1988 income as short-term capital gain.

Petitioner's primary argument for omitting the IBM sale proceeds from his 1988 gross income is that he never received the money. In essence, he alleges that the IBM sale proceeds were taken from his account by a Merrill Lynch employee. By alleging nonreceipt of the IBM sale proceeds, including the portion that may have been represented by the $22,960 "withdrawal" from his Merrill Lynch account, petitioner is, in effect, claiming a 1988 theft loss of the IBM sale proceeds rather than their noninclusion in income.

Thomas P. McDonnell, a Merrill Lynch employee for 22 years, who (at the time of the trial) was a Merrill Lynch vice president and administrative manager responsible for certain "back office" operations that occur in an office, testified that, pursuant to Merrill Lynch's normal practice, the IBM stock would have been sold upon the placement of an order to sell (either by telephone or in writing) by the legal or beneficial owner of the stock; i.e., petitioner. Thereafter, the sale of the stock would have

been verified with petitioner by telephone, and a confirmation of the sale would have been mailed to him. Mr. McDonnell further testified that, in accordance with standard brokerage industry policy and standard Merrill Lynch firm policy (and absent specific instructions to the contrary), if petitioner had requested payment of the sale proceeds from a sale of securities, a check would have been made payable to him as the owner of record on the statement.[6] He stated that such checks are sent by regular, first class U.S. mail and that, if the check "expires" (i.e., it is not cashed within a certain period of time), the amount of the check is redeposited to the customer's account.

Section 165 allows an individual taxpayer to deduct a theft loss in the year during which the taxpayer discovers such loss. See sec. 165(a), (c)(1), (e). Petitioner bears the burden of proving that a theft (and not, for instance, merely a mysterious disappearance of the property) has occurred and that the requirements of section 165 have been met. See Rule 142(a); Jacobson v. Commissioner, 73 T.C. 610, 613 (1979); Allen v. Commissioner, 16 T.C. 163, 166 (1951) (absent positive proof, a

---

[6] Mr. McDonnell testified that, because Merrill Lynch was required to retain records of customer transactions for only 7 years, he was unable to produce copies of the transaction confirmation slip, the canceled check, or any other records specifically related to the 1988 sale of petitioner's 240 shares of IBM. In fact, he was "amazed" that the 1988 Merrill Lynch statements pertaining to petitioner's account were still available in Merrill Lynch's microfiche library.

taxpayer must present evidence that reasonably leads the trier of fact to conclude that the property was stolen).  In this case, petitioner has failed to establish even the reasonable likelihood that the IBM sale proceeds were stolen by a Merrill Lynch employee or, indeed, by anyone.  His argument is premised solely on respondent's inability to prove that the IBM sale proceeds were mailed to him or that someone at Merrill Lynch did not steal those proceeds.  Respondent bears no such burden.  Petitioner offers only his own testimony that he never received the IBM sale proceeds coupled with his sheer speculation that, because of what he perceives as Merrill Lynch's inadequate internal procedures for verifying the transmission to and receipt of money by its customers, those sale proceeds must have been stolen.  Such speculation does not convince us that the IBM sale proceeds were, in fact, stolen.  Petitioner has offered no evidence that the Merrill Lynch procedures described by Mr. McDonnell for handling stock trades and the proceeds from those trades were not followed in connection with the 1988 sale of petitioner's IBM stock.  As a result, we conclude that petitioner has failed to carry his burden of proving that he sustained a 1988 theft loss within the meaning of section 165.  Nor has he shown that any portion of the IBM sale proceeds is otherwise deductible for that year as a loss under that section.

D.  Conclusion

We sustain respondent's determination to include $40,347 in petitioner's gross income for the audit year, and we hold that petitioner is not entitled to a deduction for loss of the IBM sale proceeds of $27,573 as an offset to that income inclusion.

II.  Schedule A Itemized Deductions

We must decide whether petitioner is entitled to Schedule A itemized deductions for the audit year consisting of real estate taxes of $1,420 and "deductible points" (mortgage interest) of $10,430.  The 1988 return indicates that those amounts relate to what was, before his incarceration, petitioner's personal residence in Fairfax, Virginia.

Petitioner has failed to substantiate his payment, during 1988, of any real property taxes with respect to his personal residence; and, except for an undated, handwritten listing of mortgage payments due with respect to various properties, including his personal residence, and a computer printout which appears to list mortgage payments due on that residence for March, April, and May 1992, petitioner has failed to produce any receipts or other evidence to corroborate his return position that he made a 1988 payment of "deductible points".  Petitioner did not claim a deduction for mortgage interest on what he claims

is his 1987 return (the 1987 Form 1040),[7] which indicates that the property was not subject to a mortgage during that year; and, although petitioner's classification of the alleged $10,430 payment as "deductible points" may indicate that the property was mortgaged in 1988, petitioner has failed to offer any evidence, in the form of closing documents, canceled checks, etc., of the mortgage or of the payment of "points" during 1988.  Moreover, petitioner has failed to provide even the minimal substantiation of the payment of either points or real estate taxes that would permit us to estimate allowable deductions as permitted under Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  Even under Cohan, there must be sufficient evidence in the record to provide a basis upon which an estimate may be made.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  Here, there is none. Cf. Estate of Dickerson v. Commissioner, T.C. Memo. 1997-165 (taxpayer's Schedule A deduction for mortgage interest sustained on the basis of Cohan).  Therefore, we reject petitioner's claim, raised at trial, to Schedule A itemized deductions.

---

[7] We have received into evidence a copy of the 1987 Form 1040.  That document is not signed by petitioner, but it is signed by a return preparer (petitioner's attorney) under what appears to be a date of Aug. 2, 1990.  It carries the annotation "client copy".  We shall use that document for limited purposes, as described below.  We make no finding that the original of that document was ever filed by petitioner.

III.  Schedule C Loss From Petitioner's Law Practice

Next, we turn to the issue of whether petitioner sustained a 1988 deductible loss of $6,724 associated with his law practice.

Here, as in the case of petitioner's Schedule A itemized deductions, petitioner has offered no evidence to substantiate the items (mortgage interest, utilities, telephone, depreciation, laundry and cleaning, and bar membership dues) that constitute the alleged deductible expenses.  Here, too, petitioner has failed to provide the minimal substantiation of the alleged expenses that would permit us to estimate the allowable deductions pursuant to Cohan v. Commissioner, supra.  Therefore, we reject petitioner's claim, raised at trial, to a Schedule C. loss.[8]

IV.  Schedule E Losses From Real Property Rentals

Petitioner's 1988 Schedule E indicates that, during the audit year, petitioner owned nine rental properties, each of

[8]  Petitioner's reporting of zero gross receipts from his law practice during the audit year (the first 5-1/2 months of which preceded his incarceration) indicates that the loss may be disallowed on the alternative ground that, during that year, petitioner did not conduct his law practice with a bona fide intention of making a profit and may, in fact, have either abandoned or at least temporarily discontinued the practice after 1987 when, according to the 1987 Form 1040, he earned a small ($1,698) profit on very low ($2,884) gross receipts.  As discussed more fully infra in section IV, losses incurred by an individual in connection with a purported trade or business are not allowable in the absence of a bona fide profit motive.

which generated a loss for the year.  Four of those properties
generated zero rental income, including the property with the
greatest loss and the most expenses.  The Schedule E attached to
the 1987 Form 1040 indicates that four of the properties that
generated losses in 1988 also generated losses in 1987 and that
two of the properties that produced zero rental income in 1988
did the same in 1987.

The holding of real property for rental purposes normally
constitutes the use of the property in a trade or business.  See
Lagreide v. Commissioner, 23 T.C. 508, 512 (1954).  Losses
incurred by an individual in conducting a trade or business are,
subject to certain restrictions not here relevant, deductible
pursuant to section 165(a) and (c)(1).[9]  Losses are not
considered to have been incurred in a trade or business unless it
is shown that the activity in question was undertaken with the
primary motive or intention of making a profit.  Lamont v.

---

[9]  SEC. 165.  LOSSES.

   (a) General Rule.--There shall be allowed as a
deduction any loss sustained during the taxable year and
not compensated for by insurance or otherwise.

         *      *      *      *      *      *      *

   (c) Limitation on Losses of Individuals.--In the case
of an individual, the deduction under subsection (a) shall
be limited to--

   (1) losses incurred in a trade or business;

Commissioner, 339 F.2d 377, 380 (2d Cir. 1964), affg. T.C. Memo. 1964-2; Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Jasionowski v. Commissioner, 66 T.C. 312, 319 (1976); sec. 1.183-2(a), Income Tax Regs.  Although a taxpayer's expectation of profit need not be reasonable, there must be a good faith objective of making a profit.  See Dreicer v. Commissioner, supra.

There is no evidence in the record that any of the properties listed in the 1988 return has ever generated a profit, or that petitioner expected that they would ever become profitable, either individually or as a group.  To the contrary, petitioner, on brief, indicates that he never believed that his rental properties would become profitable.  For example, in defense of his nonpayment of estimated taxes for the audit year, petitioner states in his opening brief:

> Petitioner cannot be held liable for failing to file an estimated tax return because the Petitioner did not owe any taxes and has never owed any taxes to the Internal Revenue Service in the more than 50 years he has been filing income taxes.  The deductions Petitioner has used for this tax year and all other tax years have always [been] in excess of the income he has earned and therefore Petitioner * * * had not [sic] duty to file any estimated income tax.  [Emphasis added.]

Similarly, in his reply brief, petitioner states:

> There was not [sic] need to pay estimated tax since I have never owed the IRS an estimated tax in 20 years of practicing law and renting properties.

The foregoing statements are tantamount to an admission that, regardless of the amount of (1) dividends, interest and/or capital gains attributable to his Merrill Lynch account and/or other sources and (2) profits from his law practice (for which petitioner did report a small profit for 1987), petitioner always anticipated that losses generated by his rental activities would be sufficient to offset such income, thereby resulting in no tax liability to petitioner.  Moreover, for the audit year, the reported expenses attributable to petitioner's rental properties were almost 250 percent greater than the reported rental income.  That disparity between expense and income further supports the conclusion that petitioner operated his rental properties without a good faith objective of generating a profit.  Therefore, we reject petitioner's claim, raised at trial, to Schedule E losses.

V.   The Dependency Exemptions

Section 151(a) and (c)(1) allows deductions for exemptions for dependents.  In order to be entitled to dependency exemptions for three of his children, petitioner must show that each child meets the statutory definition of "dependent", which, under section 152(a)(1), includes a son or daughter over half of whose support, for the taxable year, is provided by the taxpayer.  Under section 151(c)(1)(B), each child must be either under 19 years of age or a student under 24 years of age, at yearend.

Petitioner offered no evidence that the foregoing statutory

requirements were satisfied for the audit year.  Therefore, we reject petitioner's claim, raised at trial, to deductions for three dependency exemptions.

VI.  Respondent's Section 72(t) Determination

Section 72(t) provides, in pertinent part, as follows:

SEC. 72(t).  10-Percent Additional Tax on Early Distributions From Qualified Retirement Plans.--

(1) Imposition of additional tax.--If any taxpayer receives any amount from a qualified retirement plan * * *, the taxpayer's tax * * * for the taxable year in which such amount is received shall be increased by an amount equal to 10-percent of the portion of such amount which is includable in gross income.

Petitioner admits receipt of $9,022 from the National Bank of Washington during the audit year, and he further admits that the money was distributed from "a 401 or some type of retirement account", indicating his acknowledgment that the distribution is subject to section 72(t)(1).  Petitioner argues, however, that the $9,022 constituted a net distribution and that the bank withheld the 10-percent tax from the gross amount of the withdrawal.  Petitioner further alleges that it is common practice for banks to collect the 10-percent additional tax on early distributions from qualified retirement plans.

Once again, other than his self-serving testimony, petitioner has offered no evidence in support of his position, no bank statements or other evidence that would corroborate his assertion that the tax was withheld or that it is common practice

(and was common practice during the audit year) for banks to
withhold the tax. This Court is not bound to accept a taxpayer's
self-serving, unverified, and undocumented testimony. Shea v.
Commissioner, 112 T.C. 183, 189 (1999). Therefore, we sustain
respondent's imposition of the 10-percent additional tax on early
distributions from qualified retirement plans.

## VII. Additions to Tax

### A. Respondent's Section 6651(a)(1) Determination

Section 6651(a)(1) provides for an addition to tax in the
event a taxpayer fails to file a timely return (determined with
regard to any extension of time for filing), unless it is shown
that such failure is due to reasonable cause and not due to
willful neglect. The amount of the addition is equal to 5
percent of the amount required to be shown as tax on the
delinquent return for each month or fraction thereof during which
the return remains delinquent, up to a maximum addition of 25
percent for returns more than 4 months delinquent.

The 1988 return was not filed until on or about May 14,
1997, more than 8 years after the April 17, 1989, due date. See
sec. 6072(a).[10] Petitioner argues that, because he believed in
good faith that his attorney had timely filed a 1988 return for
him, the failure to timely file the return was due to reasonable

---

[10] There is no evidence that petitioner timely sought to
extend the Apr. 17 due date.

cause.  Petitioner points to a letter from his attorney dated June 14, 1990, in which she states that she is in the process of preparing returns for 1984, 1985, and 1987, and that, upon completion of those returns, she "will go back and finish 1983 * * *, 1986, 1988 and 1989."  Both petitioner's attorney and the Internal Revenue Service (IRS) Philadelphia Service Center later confirmed that she never filed a 1988 return for petitioner.

There is no record as to when petitioner might have given his attorney the records needed to prepare his 1988 return.  The fact that, as of June 14, 1990, she had not even begun to prepare the return indicates that petitioner could not have believed in good faith that it would be timely filed by April 17, 1989.  Moreover, even if we were able to find such good faith reliance by petitioner, it would not constitute "reasonable cause" for purposes of section 6651(a).  "The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under § 6651(a)(1)."  United States v. Boyle, 469 U.S. 241, 252 (1985).  Nor did the mere fact of petitioner's incarceration at the time his 1988 return was due constitute reasonable cause for his failure to file the return.  See Llorente v. Commissioner, 74 T.C. 260, 268-269 (1980), affd. in part and revd. in part on another issue 649 F.2d 152 (2d Cir. 1981).  Therefore, we sustain respondent's imposition of a

25-percent addition to tax under section 6651(a).

B.  Respondent's Section 6653(a)(1) Determination

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the entire underpayment if any portion of such underpayment is due to negligence or intentional disregard of rules or regulations (without distinction, negligence).  An underpayment, for purposes of section 6653(a), is the amount by which the tax liability exceeds the tax shown on a timely filed return.  Secs. 6653(c)(1), 6211(a).  Inasmuch as the 1988 return was not timely filed, the amount shown on a timely filed return is zero, and the underpayment equals the entire tax liability. Emmons v. Commissioner, 92 T.C. 342, 348-349 (1989), affd. on another issue 898 F.2d 50 (5th Cir. 1990).  When an underpayment is caused by the taxpayer's failure to timely file an income tax return, the underpayment is due to negligence if the taxpayer lacks reasonable cause for the failure.  See id. at 349-350. Because we find that petitioner lacked reasonable cause for his failure to timely file the 1988 return, it follows, and we find, that his underpayment was due to negligence.  Id.

Moreover, we reach the same result even if we view the issue to be whether petitioner had a reasonable basis for the underpayment itself.  Section 6653(g) provides that any portion of an underpayment that is attributable to a taxpayer's failure to report income shown on an information return shall be treated

as due to negligence in the absence of clear and convincing evidence to the contrary. Petitioner argues that he "could not have filed a tax * * * [return] on 1099 forms he never received due to his incarceration." He also implies that, because he never paid taxes (on account of the excess of his rental property and other allegedly deductible expenses and exemptions over his total income), he had a reasonable basis for believing that he did not owe tax for the audit year. Even if we accept as fact that petitioner did not receive the 1988 information returns mailed to him, he must have known of the investments that gave rise to them.[11] Therefore, he should have been aware of all or a portion of the income generated by those investments and of the probability that information returns had been issued with respect to those investments. There is no evidence that he could not have arranged for the information returns to be sent to him in prison. In addition, petitioner's consistent adherence to an improper reporting position for prior years with respect to the deductibility of losses from his rental properties (discussed supra in Section IV) does not constitute a reasonable basis for believing that there was no tax due for the audit year. As a result, petitioner has failed to rebut the presumption of negligence, under section 6653(g), arising out of his failure to

---

[11] Income from several of the same investments was listed on the 1987 Form 1040.

report the income listed on the 1988 information returns mailed to him.

We sustain respondent's determination under section 6653(a)(1).

C.  Respondent's Section 6654 Determination

1.  Introduction

Section 6654 provides for an addition to tax in the event of an underpayment of a required installment of individual estimated tax.  Sec. 6654(a) and (b).  As relevant to this case, each required installment of estimated tax is equal to 25 percent of the "required annual payment", which in turn is equal to the lesser of (1) 90 percent of the tax shown on the individual's return for that year (or, if no return is filed, 90 percent of his or her tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100 percent of the tax shown on that return.  Sec. 6654(d)(1)(A), (B)(i) and (ii).  The due dates of the required installments for a calendar taxable year are April 15, June 15, and September 15 of that year and January 15 of the following year.  Sec. 6654(c)(2).  For purposes of section 6654, an individual's tax consists of income tax and self-employment tax and is determined before the application of any wage withholding credit[12] (but after the

_____

[12]  Under sec. 6654(g)(1), wage withholding credits are treated as payments of estimated tax.

application of other allowable credits).  Sec. 6654(f); see sec. 31.  Except in very limited circumstances not applicable to this case, see sec. 6654(e)(3)(B), section 6654 provides no exception for reasonable cause or lack of willful neglect.

There are two mechanical exceptions to the applicability of the section 6654 addition to tax.  First, as relevant to this case, the addition is not applicable if the tax shown on the individual's return for the year in question (or, if no return is filed, the individual's tax for that year), reduced for these purposes by any allowable credit for wage withholding, is less than $500.[13]  Sec. 6654(e)(1).  Second, the addition is not applicable if the individual's tax for the preceding taxable year was zero.  Sec. 6654(e)(2).

Petitioner argues that he "cannot be held liable for failing to file an estimated tax return because the Petitioner did not owe any taxes".  Respondent's deficiency determination for the audit year, which we sustain in full herein, shows that, contrary to petitioner's argument, petitioner did, in fact, owe taxes for the audit year.  That does not dispose of the matter, however. There remains the issue of whether petitioner may rely on having satisfied the requirement of section 6654(d)(1)(A) and (B) that the amount of each of his estimated tax installments for the

---

[13]  Effective for taxable years beginning after Dec. 31, 1997, the threshold amount is $1,000.  Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1202(a), 111 Stat. 994.

audit year (in this case, zero) was equal to 25 percent of the lesser of (1) 90 percent of the tax shown on his return for that year or, alternatively, (2) 100 percent of the tax shown on his return for the prior year, 1987.

   2.   Satisfaction of Section 6654(d)(1)(B)(i)

The 1988 return, filed on or about May 14, 1997, shows a zero tax liability for that year.  If the 1988 return constitutes a valid return for purposes of section 6654(d)(1)(B)(i), there can be no underpayment of a required installment of estimated tax since there are no required installments due when there is no tax liability shown on the return as filed; i.e., 25 percent of zero equals zero.

We have repeatedly held that a taxpayer's estimated tax liability is based upon the taxpayer's tax liability as stated on the original tax return as filed, and not upon the notice of deficiency amount or the ultimate tax liability (here, one and the same and referred to, for convenience, as the ultimate tax liability).  See Gleason v. Commissioner, T.C. Memo. 1990-110; Warda v. Commissioner, T.C. Memo. 1988-572; Sampson v. Commissioner, T.C. Memo. 1986-231; see also Weir v. Commissioner, T.C. Memo. 2001-184.  Moreover, the sufficiency of estimated tax payments has been determined with respect to the tax liability shown on the taxpayer's return for the preceding taxable year pursuant to section 6654(d)(1)(B)(ii), rather than with respect

to the ultimate tax liability for the taxable year in issue, even when the return for the preceding year was held to have fraudulently understated income, Schwarzkopf v. Commissioner, 246 F.2d 731, 734-735 (3d Cir. 1957), affg. on other issues and remanding on that issue T.C. Memo. 1956-155, or when such return was not filed until after the due date, Rev. Rul. 2003-23, 2003-8 I.R.B. 511;  see also Rev. Rul. 80-355, 1980-2 C.B. 374 ("return for the taxable year" is joint return filed after due date as replacement for separate returns filed before due date).

None of the above-cited authorities address circumstances in which the taxpayer's original return was filed after a notice of deficiency had been issued.  In this case, the 1988 return was filed more than 2 years after issuance of the notice (May 14, 1997, versus May 3, 1995) and almost 22 months after the filing of the petition on July 17, 1995.  Under those circumstances we will disregard the 1988 return as we do not consider it to be a "return" for purposes of section 6654(d)(1)(B)(i).[14]  To hold

---

[14]  There is no inconsistency between our treating petitioner's reporting of the amounts listed on Schedules B and D of the 1988 return as an admission that those amounts are includable in 1988 gross income, see the discussion supra in Section I.A., and our finding herein that the 1988 return is not a "return" for purposes of sec. 6654(d)(1)(B)(i).  The former conclusion is based upon caselaw which treats a taxpayer's return position as an admission by the taxpayer that that position is correct.  That characterization of a taxpayer's return position is not contingent upon a finding that the return itself constitutes a valid return for purposes of various provisions of the Internal Revenue Code (e.g., secs. 6501(a), 6651(a)(1),
(continued...)

otherwise would, in effect, negate the application of the portion of section 6654(d)(1)(B)(i) that defines the term "required annual payment" "if no return is filed" as "90 percent of the tax for * * * [the taxable] year".  As regards any taxable year for which the taxpayer failed to file a return and received a deficiency notice that included a proposed section 6654 addition to tax, the taxpayer would be able to negate the addition to tax simply by filing a return for that year that showed a tax liability less than the quarterly estimated payments actually made or, if none had been made, that showed a zero tax liability. Such a result is inconsistent with both the purpose and function of section 6654(d)(1)(B)(i).

In Evans Cooperage Co. v. United States, 712 F.2d 199 (5th Cir. 1983), the Court of Appeals for the Fifth Circuit characterized as a "safe harbor" the provision of the corporate estimated tax that shields a corporation from an addition to tax if the estimated tax paid during the year is at least equal to the amount of tax shown on the return of the corporation for the preceding taxable year (section 6655(d)(1), during 1976 and 1977, the audit years in that case).  Id. at 201.  The Court of Appeals described and commented on the legislative purpose of the

---

[14](...continued)
6654(d)(1)(B)) with respect to which the filing of a valid return gives rise to (or limits) specific rights or actions of either the taxpayer or the Government.

preceding-year-return safe harbor as follows:

> This objective of the safe harbor provision -- to provide a predictable escape from any possible penalty liability -- would be defeated if penalties for underpayment of estimated taxes during the year were based, not on the easily determinable amount reflected on the preceding year's return, but instead upon the ultimate tax liability, possibly determined by adverse tax audit, a year or so after the tax year for * * * which the estimated tax installments were paid. * * * [Id. at 204.]

"Safe harbor" also is an apt description of the identical preceding-year-return rule applicable to individuals, sec. 6654(d)(1)(B)(ii), and it is an apt description of the rule, applicable to both corporations and individuals, limiting the required annual payment of estimated tax to the tax shown on the return (if one is filed) for the taxable year in question, secs. 6654(d)(1)(B)(i) and 6655(d)(1)(B)(i).

Our decision is consistent with the "objective of the safe harbor provision" referred to by the Court of Appeals in Evans Cooperage. Petitioner's failure to file a return prior to respondent's issuance of the notice presents us with a situation that is the exact opposite of that referred to in Evans Cooperage, where the filing of returns preceded the audit. Here, upon issuance of the notice, it is the tax liability determined by respondent that is the "easily determinable amount" and it is the return amount that is "possibly determined" in some later year. In effect, petitioner, by not filing the 1988 return prior to issuance of the notice, has waived his right to the

"predictable escape from any possible penalty liability" that would have been afforded by that return.

Our decision is also consistent with Congress's evident plan for the application of section 6654. Rules governing the assessment, collection, and payment of the section 6654 addition are found in section 6665. In pertinent part, section 6665(a) provides that (1) the section 6654 addition is to be paid upon notice and demand and is to be assessed, collected, and paid in the same manner as taxes, and (2) references in the Internal Revenue Code to "tax" imposed shall be deemed also to refer to the addition to tax.[15] Section 6665(b)(2), however, makes the

---

[15] In full, sec. 6665 provides:

Sec. 6665. APPLICABLE RULES

(a) Additions Treated As Tax.- Except as otherwise provided in this title –

(1) the additions to the tax, additional amounts, and penalties provided by this chapter shall be paid upon notice and demand and shall be assessed, collected, and paid in the same manner as taxes; and

(2) any reference in this title to "tax" imposed by this title shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter.

(b) Procedure For Assessing Certain Additions To Tax.- For purposes of subchapter B of chapter 63 (relating to deficiency procedures for income, estate, gift, and certain excise taxes), subsection (a) shall not apply to any addition to tax under section 6651, 6654, 6655; except that it shall apply–

(continued...)

deficiency procedures, found in sections 6211 through 6216 (the deficiency procedures), inapplicable to the section 6654 addition except in one instance.  In effect, section 6665(b)(2) makes the deficiency procedures inapplicable to the addition if the taxpayer has filed a return for the year in question.  The Commissioner is thus free to assess and collect any section 6654 addition based upon the tax shown on the taxpayer's return as filed without the need first to issue a notice of deficiency. The one instance in which the deficiency procedures do apply to the addition is where the taxpayer has failed to file a return for the year in question.  Sec. 6665(b)(2).

The deficiency procedures prescribe a comprehensive set of rules that, with limited exceptions, the Commissioner must follow before he is free to assess and collect certain taxes, including the income tax.  The term "deficiency" is defined in section 6211(a)(1)(A).  Generally, a deficiency is the excess of "the tax imposed" over the tax shown on the taxpayer's return if the taxpayer makes a return showing an amount of tax.  Id. Obviously, the "return" referred to in that definition must be a

---

[15](...continued)
         (1) in the case of an addition described in section 6651, to that portion of such addition which is attributable to a deficiency in tax described in section 6211; or

         (2) to an addition described in section 6654 or 6655, if no return is filed for the taxable year.

return made before the Commissioner determines a deficiency based upon that return.  If he determines that there is a deficiency, the Commissioner is authorized by section 6212(a) to mail notice thereof to the taxpayer by certified or registered mail.  If the taxpayer has made no return by the time the Commissioner mails him notice of a deficiency, then, for purposes of determining the tax shown on his return, the taxpayer is deemed to have made a return showing zero tax.[16]  Also, if the taxpayer has made no return by that time, then, by virtue of section 6665(a)(2) and (b)(2), the term "tax imposed" is deemed to include the section 6654 addition to tax, and the addition is part of the deficiency. Pursuant to section 6213(a), unless there is substantial doubt as to the collectibility of the deficiency, such as to justify a jeopardy assessment under section 6861, no assessment of the deficiency (including the section 6654 addition) may be made until the expiration of 90 (or, in certain cases, 150) days after the Commissioner has mailed notice of the deficiency to the taxpayer or, if a petition is filed with this Court, until the decision of this Court has become final.

In short, the term "deficiency" includes the section 6654 addition in a no-return situation, and, once the Commissioner has

_____

[16]  See sec. 301.6211-1(a), Proced. & Admin. Regs., which provides in pertinent part that "[i]f no return is made * * * for the purpose of the definition 'the amount shown as the tax by the taxpayer upon his return' shall be considered as zero."

determined that there is a deficiency and has mailed notice thereof to the taxpayer, the deficiency procedures limit the Commissioner's authority to assess and collect both the underlying tax and the addition. If we were to treat a post-notice original return (post-notice return) as a return for purposes of the section 6654(d)(1)(B)(i) safe harbor, then sections 6665(b)(2) and 6213(a) would be in conflict. If a post-notice return were a return for purposes of the safe harbor, then section 6665(b)(2) would allow the Commissioner to disregard the deficiency procedures and immediately assess and collect any unpaid section 6654 addition. Section 6213(a) prohibits the Commissioner from immediately assessing and collecting the section 6654 addition in a post-notice return situation, however, because section 6665(b)(2) indisputably makes the deficiency procedures applicable to the section 6654 addition if the taxpayer has made no return when the Commissioner issues a notice of deficiency.[17] If we disregard the post-notice return for purposes of both sections 6654(d)(1)(B)(i) and 6665(b)(2), we are able to avoid a conflict and interpret sections 6213, 6654, and

---

[17] We recognize that, in this case, the 1988 return showed a loss. Therefore, based upon that return, petitioner had no obligation to pay estimated taxes, and any issue concerning the Commissioner's inability immediately to assess a sec. 6654 addition to tax by virtue of sec. 6213(a) would be moot. Nonetheless, not every post-notice return will foreclose a section 6654 addition, which addition, in the absence of sec. 6213(a), would immediately be assessable.

6665 in a way that makes sense.

We shall disregard the 1988 return for purposes of determining whether petitioner satisfies the return-filed safe harbor of section 6654(d)(1)(B)(i).

Because petitioner made no estimated tax payments for the audit year, he necessarily failed the alternative safe harbor of section 6654(d)(1)(B)(i) to make estimated tax payments equal to "90 percent of the tax" (i.e., his ultimate tax liability) for the audit year.[18]

### 3. Satisfaction of Section 6654(d)(1)(B)(ii)

As noted supra in Section II, the trial record does not establish that petitioner ever filed a return for 1987. Because there is no return "for the preceding taxable year", petitioner may not rely on the safe harbor provided by section 6654(d)(1)(B)(ii).[19]

---

[18] We also disregard the 1988 return for purposes of sec. 6654(e)(1), and, because petitioner's 1988 ultimate tax liability exceeds $500, the exception provided by that paragraph if no return is filed is inapplicable.

[19] Also, because petitioner's 1987 tax was more than zero (the 1987 Form 1040 showed a tax due of $206 and a notice of deficiency issued for 1987 showed a tax deficiency of $2,331), the exception provided by sec. 6654(e)(2) is inapplicable.

4. <u>Conclusion</u>

We sustain respondent's determination under section 6654.

<u>Decision will be entered</u>

<u>for respondent</u>.

Reviewed by the Court.

WELLS, COHEN, GERBER, CHIECHI, GALE, THORNTON, HAINES, GOEKE, WHERRY, KROUPA, and HOLMES, <u>JJ</u>., agree with this majority opinion.

SWIFT, <u>J</u>., concurs.

VASQUEZ, <u>J.</u>, concurring:  I concur with the result reached by the majority that petitioner is liable for the addition to tax pursuant to section 6654.  I write separately, however, to emphasize that our well-established precedent enunciated in <u>Beard v. Commissioner</u>, 82 T.C. 766, 777 (1984), affd. per curiam 793 F.2d 139 (6th Cir. 1986), resolves this issue.

The Internal Revenue Code does not define the term "return". See sec. 6011; <u>Swanson v. Commissioner</u>, 121 T.C. 111, 122-123 (2003).  Based on the Supreme Court's precedent in <u>Zellerbach Paper Co. v. Helvering</u>, 293 U.S. 172, 180 (1934), and <u>Florsheim Bros. Drygoods Co. v. United States</u>, 280 U.S. 453, 464 (1930), this Court has established a four-part test to determine whether a document submitted by the taxpayer is a valid return.  In order to qualify as a return, the document must meet the following requirements:

> First, there must be sufficient data to calculate tax liability; second, the document must purport to be a return; third, there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and fourth, the taxpayer must execute the return under penalties of perjury.

<u>Beard v. Commissioner</u>, <u>supra</u> at 777.  We apply this test to "returns" for purposes of section 6501,[1] section 6651(a)(1),[2]

---

[1]  See, e.g., <u>ICI Pension Fund v. Commissioner</u>, 112 T.C. 83, 88-89 (1999); <u>Joseph v. Commissioner</u>, T.C. Memo. 1996-77.

[2]  See, e.g., <u>Cabirac v. Commissioner</u>, 120 T.C. 163, 168-170

(continued...)

section 6653(a),[3] section 6662,[4] section 6013,[5] section 6033,[6] section 6651(f),[7] section 6511,[8] section 6011,[9] section 6012,[10] section 6072,[11] and former section 6661,[12] among others.  Other Federal courts rely on and apply this test to determine whether a return is valid.[13]  Situations where we have not applied Beard are when the particular Code section supplies a definition of

---

[2](...continued)
(2003); Janpol v. Commissioner, 102 T.C. 499, 503, 505 (1994); Beard v. Commissioner, 82 T.C. 766, 780 (1984), affd. per curiam 793 F.2d 139 (6th Cir. 1986); Unroe v. Commissioner, T.C. Memo. 1985-149; Counts v. Commissioner, T.C. Memo. 1984-561, affd. 774 F.2d 426 (11th Cir. 1985).

[3] See, e.g., Cavanaugh v. Commissioner, T.C. Memo. 1991-407, affd. without published opinion 986 F.2d 1426 (10th Cir. 1993); Unroe v. Commissioner, supra; Counts v. Commissioner, supra.

[4] See Williams v. Commissioner, 114 T.C. 136, 140 (2000).

[5] See, e.g., Sloan v. Commissioner, 102 T.C. 137, 147 (1994), affd. 53 F.3d 799 (7th Cir. 1995); Hintenberger v. Commissioner, T.C. Memo. 1990-36, affd. without published opinion 922 F.2d 848 (11th Cir. 1990); Britt v. Commissioner, T.C. Memo. 1988-419.

[6] See, e.g., Martin Fireproofing Profit Sharing Plan & Trust v. Commissioner, 92 T.C. 1173, 1193 (1989).

[7] See Dunham v. Commissioner, T.C. Memo. 1998-52.

[8] See Turco v. Commissioner, T.C. Memo. 1997-564.

[9] See, e.g., Galuska v. Commissioner, 98 T.C. 661, 668-669 (1992), affd. 5 F.3d 195 (7th Cir. 1993); Beard v. Commissioner, supra at 780.

[10] See Beard v. Commissioner, supra at 780.

[11] See id. at 773.

[12] See Eckel v. Commissioner, T.C. Memo. 1990-174.

[13] See, e.g., In re Hatton, 220 F.3d 1057, 1060 (9th Cir. 2000); In re Hindenlang, 164 F.3d 1029, 1033 (6th Cir. 1999).

"return" for purposes of that code section only, such as in section 6103(b)(1).[14]

Furthermore, whether a return constitutes a valid return[15] for purposes of section 6654 is not a novel issue to the Court. We have applied Beard in more than 35 cases involving section 6654.[16]

The document filed by petitioner contains sufficient data to calculate a tax liability, purports to be a return, and is signed under the penalty of perjury. The issue is whether it is an honest and reasonable attempt to satisfy the requirements of the tax law.

In deciding whether the document filed is an "honest and reasonable attempt to satisfy the requirements of the tax law", courts have analyzed whether the return filed can still serve a

---

[14] Sec. 6103(b)(1) provides:

(1) Return.--The term "Return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, or on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

[15] The majority makes no finding as to whether petitioner's 1988 tax return is invalid, or whether it is valid but will nonetheless be disregarded.

[16] See, e.g., Cabirac v. Commissioner, supra at 170; Howard v. Commissioner, T.C. Memo. 2000-222; Sochia v. Commissioner, T.C. Memo. 1998-294; Turco v. Commissioner, supra; Swaim v. Commissioner, T.C. Memo. 1996-545; Sochia v. Commissioner, T.C. Memo. 1995-475, affd. without published opinion 116 F.3d 478 (5th Cir. 1997); Sickler v. Commissioner, T.C. Memo. 1994-462; Cavanaugh v. Commissioner, supra.

purpose, or have any effect, under the Code.  In re Hindenlang, 164 F.3d 1029, 1034 (6th Cir. 1999) (document filed post-assessment not a valid return under Beard); In re Hatton, 220 F.3d 1057, 1061 (9th Cir. 2000) ("belated acceptance of responsibility * * * does not constitute an honest and reasonable attempt to comply with the requirements of the tax law" when taxpayer filed a document purporting to be a return post-assessment).  This inquiry is proper under the third prong of the Beard test.

Petitioner's 1988 tax return was due on or before April 17, 1989.  See secs. 6072(a), 7503.  In this case, petitioner filed his 1988 "return" on or about May 14, 1997, more than 8 years after the due date.  This was more than 2 years after he received the May 3, 1995, notice of deficiency, which certainly put him on notice that his 1988 return had not been filed.[17]  Further, petitioner did not file his purported "return" until more than 21 months after he filed his petition with the Court on July 17, 1995.  The adjustments in the notice of deficiency were determined without the benefit of petitioner's "return".  In applying the facts as found by the majority opinion to the test set forth in Beard, it is evident under the facts of this case that petitioner's filing of the purported "return" was not an honest and reasonable attempt to comply with the tax laws.

---

[17]  It appears petitioner was put on notice that his 1988 tax return had not been filed as early as June 14, 1990, when he received a letter from his attorney, who was preparing his tax returns, which stated she had not yet filed a return for 1988. See majority op. p. 21.

Petitioner made no estimated tax payments for 1988. There is no record that petitioner filed a return for 1987. Petitioner has not shown that he falls within any of the exceptions to the 6654(a) addition to tax. See sec. 6654(e); <u>Grosshandler v. Commissioner</u>, 75 T.C. 1, 20-21 (1980). For these aforementioned reasons, respondent's additions to tax under section 6654(a) should be sustained.

GOEKE, <u>J</u>., concurring:  I agree with the reasoning and the result reached by the majority.  I write regarding the application of section 6654 only to clarify why the approach used in this case is consistent with our normal practice of applying the return test set forth in <u>Beard v. Commissioner</u>, 82 T.C. 766 (1984), affd. per curiam 793 F.2d 139 (6th Cir. 1986).

We have applied the <u>Beard</u> test in many different contexts.[1] We have even relied on <u>Beard</u> in determining whether a return was filed and the taxpayers were liable for the addition to tax under

---

[1]See, e.g., <u>Swanson v. Commissioner</u>, 121 T.C. 111, 123-125 (2003) (whether a substitute for return constituted a return within the meaning of 11 U.S.C. sec. 523(a)(1)(B) (2000)); <u>Williams v. Commissioner</u>, 114 T.C. 136, 140 (2000) (accuracy-related penalty under section 6662(a)); <u>ICI Pension Fund v. Commissioner</u>, 112 T.C. 83, 88 (1999) (period of limitations under sec. 6501); <u>Galuska v. Commissioner</u>, 98 T.C. 661, 668-669 (1992) (statutory limitations on time for filing claims for credit or refund or limitations on any amount of any credit or refund allowable for purposes of secs. 6011(a), 6511(b), and 6512(b)), affd. 5 F.3d 195 (7th Cir. 1993); <u>Martin Fireproofing v. Commissioner</u>, 92 T.C. 1173, 1192 (1989) (addition to tax for failure to timely file under sec. 6651(a)(1) and filing of information return under sec. 6033); <u>Beard v. Commissioner</u>, 82 T.C. 766, 780 (1984) (applying test for purposes of secs. 6011, 6012, 6072, and 6651(a)(1)), affd. per curiam 793 F.2d 139 (6th Cir. 1986); <u>Rodriguez v. Commissioner</u>, T.C. Memo. 2003-153 (collection case under sec. 6330 where issue was whether returns were filed for purposes of deciding whether respondent's failure to consider offer in compromise was an abuse of discretion); <u>Dunham v. Commissioner</u>, T.C. Memo. 1998-52 (fraudulent failure to file under sec. 6651(f)); <u>Eckel v. Commissioner</u>, T.C. Memo. 1990-174 (addition to tax for substantial underpayment under former sec. 6661); <u>Hintenberger v. Commissioner</u>, T.C. Memo. 1990-36 (return status under sec. 6013), affd. without published opinion 922 F.2d 848 (11th Cir. 1990); <u>Counts v. Commissioner</u>, T.C. Memo. 1984-561 (addition to tax for negligence under former sec. 6653(a)), affd. 774 F.2d 426 (11th Cir. 1985).

section 6654 where the document purporting to be a return was filed before the notice of deficiency was issued.  See, e.g., Turco v. Commissioner, T.C. Memo. 1997-564; Morgan v. Commissioner, T.C. Memo. 1987-184, affd. without published opinion 869 F.2d 1495 (7th Cir. 1989).  However, the Beard test has not been applied in some circumstances where the statutory scheme directs a different inquiry.  Cabirac v. Commissioner, 120 T.C. 163, 170 (2003) (a return prepared by the Secretary under section 6020(b) treated as a return filed by the taxpayer for purposes of determining the addition to tax under section 6651(a)(2)); Spurlock v. Commissioner, T.C. Memo. 2003-124 (same); Janpol v. Commissioner, 102 T.C. 499, 501-502 (1994) (Beard does not apply in determining period of limitations for purposes of the tax imposed by section 4975 because section 6501(l)(1) specifically references a return that does not require all the information mandated under Beard), supplementing 101 T.C. 518 (1993); see also sec. 6103(b) (definition of return for purposes of confidentiality and disclosure of returns and return information).

As explained by the majority, the statutory scheme mandates that a document filed after a notice of deficiency has been issued is not a return for purposes of section 6654.  In future cases where the statutory scheme does not provide the appropriate inquiry to be used to determine whether a return was filed, we

should continue to adhere to our well-established practice of applying the Beard test to answer the question.

WHERRY and KROUPA, JJ., agree with this concurring opinion.

FOLEY, J., dissenting:  Petitioner's valid return, which should be the basis for calculating the section 6654 penalty, is disregarded by the majority and "not [considered] * * * to be a 'return' for purposes of section 6654(d)(1)(B)(i)."  Majority op. p. 27.  There is no authority for the majority's holding, and it is contrary to the unambiguous terms of the statute.

Section 6654 provides for an addition to tax if the taxpayer fails to make the "required annual payment".  Sec. 6654(a) and (b).  The "required annual payment" is:

> the lesser of (i) 90 percent of the tax shown on the <u>return for the taxable year</u> (or, if no return is filed, 90 percent of the tax for such year), or (ii) 100 percent of the tax shown on the return of the individual for the preceding taxable year. [Sec. 6654(d)(1)(B)(i) and (ii); emphasis added.]

The majority recognizes that these are "mechanical rules", yet, presumably acknowledging that the terms of the statute are satisfied, states that "the issue [is] * * * whether petitioner may rely on having satisfied the requirement of section 6654(d)(1)(A) and (B)".  Majority op. p. 25.  The statute is unambiguous, and the taxpayer may certainly "rely" on having met its terms.  The statute does not refer to a return filed prior to an Internal Revenue Service audit or a return filed prior to the issuance of a notice of deficiency.  A valid return will suffice--without regard to when it is filed.

We need not, however, adhere to a literal application of a

statute if such adherence produces an outcome that is "demonstrably at odds" with clearly expressed congressional intent to the contrary, Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982), Peaden v. Commissioner, 113 T.C. 116, 122 (1999), or results in an outcome so absurd "as to shock the general moral or common sense", Tele-Communications, Inc. v. Commissioner, 95 T.C. 495, 507 (1990). The majority does not set forth a convincing case that either of these exceptions to the plain language doctrine are applicable. Instead, the majority disregards petitioner's valid return "to avoid a conflict and interpret sections 6213, 6654 and 6665 in a way that makes sense." Majority op. pp. 33-34. The purported conflict (i.e., regarding respondent's ability to assess the penalty while we have jurisdiction) has already been addressed and resolved by Powerstein v. Commissioner, 99 T.C. 466, 472-473 (1992). In Powerstein, the taxpayers filed amended returns subsequent to filing their petition, and we held that after we obtain jurisdiction respondent may be enjoined, pursuant to section 6213(a), from making an assessment. See Naftel v. Commissioner, 85 T.C. 527, 529-530 (1985) (stating that after we obtain jurisdiction we do not lose it).

The majority provides that Schwarzkopf v. Commissioner, 246 F.2d 731 (3d Cir. 1957), and Rev. Rul. 2003-23, 2003-8 I.R.B. 511, do not "address circumstances in which the taxpayer's

original return was filed after a notice of deficiency had been issued." Majority op. p. 27. I agree. These authorities, however, support the proposition that we should follow the statute and let the chips fall where they may. Schwarzkopf v. Commissioner, supra at 734-735 (stating that a taxpayer may rely on the tax shown on a return from the preceding year even when the return is held to have fraudulently understated income); Rev. Rul. 2003-23, 2003-8 I.R.B. 511 (stating that a taxpayer may rely on the tax shown on an untimely return for purposes of determining estimated tax payments).

In a further attempt to justify its holding, the majority expresses concern that taxpayers "would be able to negate the addition to tax simply by filing a return for that year that showed a tax liability less than the quarterly estimated payments actually made or, if none had been made, that showed a zero tax liability." Majority op. p. 28. As Judge Vasquez's concurring opinion emphasizes, long-standing precedent authorizes us to find that a return is invalid if the taxpayer does not make an honest and reasonable attempt to satisfy the requirements of the tax law. Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 180 (1934); Florsheim Bros. Drygoods Co. v. United States, 280 U.S. 453, 462 (1930); Beard v. Commissioner, 82 T.C. 766, 777 (1984), affd. 793 F.2d 139 (6th Cir. 1986). Thus, if the majority found that petitioner's return was filed with the intent to avoid the

- 47 -

estimated tax penalty, it could conclude that the return is invalid.  Yet, the majority does not make such a finding. Undeterred by an unambiguous statute and a valid return, and citing Evans Cooperage Co. v. United States, 712 F.2d 199, 204 (5th Cir. 1983), a readily distinguishable case, the majority summarily reasons that its "decision is consistent with the 'objective of the safe harbor provision'".  Majority op. p. 29.

In Evans Cooperage, the taxpayer contended that the calculation of the estimated tax penalty should be based on its amended return, rather than its timely filed original return. The court held that the phrase "return of the corporation for the preceding taxable year", in section 6655(d)(1), refers to the timely filed return for that year and not any subsequently filed amended return.  Id. at 204.  We are not faced, however, with a question of which return should be taken into account because petitioner did not file an amended return.  We simply must determine whether to accept or disregard petitioner's valid return.

The majority acknowledges that petitioner's case is the "exact opposite of that referred to in Evans Cooperage". Majority op. p. 29 (emphasis added).  I agree.  In Evans Cooperage, the court required the taxpayer to use its original return to calculate the penalty.  The majority, on the other hand, states that petitioner "waived his right" relating to the

only return he filed and is <u>prohibited</u> from using such return to calculate the penalty.  Majority op. p. 29.

If <u>Evans Cooperage</u> is to be cited for anything, it should be cited for the proposition that the Court is obligated to follow the statute.  Indeed, in response to one of petitioner's contentions, the court stated:

> It may be inequitable * * * to assess a penalty for underpayment of estimated tax, that is based upon the originally mistaken figure of income for the year, rather than upon the actual income for the year as ultimately determined.  However, <u>Congress unambiguously has provided otherwise, and the provision, if indeed inequitable, is for Congress to amend, not the courts</u>. [<u>Evans Cooperage Co. v. United States</u>, <u>supra</u> at 205; fn. ref. omitted and emphasis added.]

Similarly, we are required to follow statutory mandates and address, rather, than "disregard", salient facts.  If there is a perceived problem with the statute, Congress must address the matter.

LARO and MARVEL, <u>JJ</u>., agree with this dissenting opinion.