T.C. Memo. 2017-137

UNITED STATES TAX COURT

MARK ROBERT OHDE AND ROSE M. OHDE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11688-15.                       Filed July 10, 2017.

Floyd M. Sayre, III, for petitioners.

Susan K. Bollman, Nancy M. Gilmore, and David A. Indek, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, Judge:  The Internal Revenue Service (IRS or respondent) deter-
mined for petitioners' 2011 taxable year a deficiency of $32,964 and an accuracy-

[*2] related penalty of $6,593 under section 6662(a).[1] After concessions,[2] the issues for decision are whether petitioners: (1) are entitled to a noncash charitable contribution deduction of $145,250, as opposed to the deduction of $250 that the IRS allowed and (2) are liable for the accuracy-related penalty. We resolve both issues in respondent's favor.

FINDINGS OF FACT

The parties filed a stipulation of facts with accompanying exhibits that is incorporated by this reference. Petitioners resided in West Virginia when they petitioned this Court.

Petitioners filed a timely Form 1040, U.S. Individual Income Return, for 2011. On Schedule A, Itemized Deductions, they claimed on line 17 a charitable

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect for the tax year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[2]Petitioners conceded at trial that they had failed to report a $784 taxable refund of State income tax. In the notice of deficiency the IRS determined that petitioners had failed to substantiate a cash charitable contribution of $250 and a $6,139 charitable contribution carryover from 2010 to 2011. Petitioners put on no evidence concerning these issues at trial and did not address them in their post-trial brief. They are therefore deemed to have conceded respondent's disallowance of both claimed deductions. See Mendes v. Commissioner, 121 T.C. 308, 312-313 (2003) (holding that arguments not addressed in post-trial brief may be considered abandoned); Leahy v. Commissioner, 87 T.C. 56, 73-74 (1986) (finding concession by failure to argue).

[*3] contribution deduction of $145,250 for gifts to charity "other than by cash or check." The IRS disallowed all but $250 of this deduction.

Petitioners allege that during 2011 they donated more than 20,000 distinct items of property to Goodwill Industries (Goodwill) in Frederick, Maryland. Goodwill is a charitable organization tax exempt under section 501(c)(3). Petitioners allegedly made dozens of separate trips from their home in Shepherdstown, West Virginia, to deliver these items to Goodwill.

In terms of claimed dollar value, roughly half of petitioners' alleged gifts consisted of clothing and accessories. In this category petitioners during 2011 allegedly gave Goodwill (among other things) 1,040 items of boys' clothing, 811 items of girls' clothing, 658 items of men's clothing, and 945 items of women's clothing. In the furniture category petitioners allegedly gave Goodwill (among other things) 115 chairs, 36 lamps, 22 bookshelves, 20 desks, 20 chests of drawers, 16 bedframes, and 14 filing cabinets. And they allegedly gave Goodwill 3,153 books. We did not find petitioners' testimony on any of these points credible.

For each delivery petitioners received from Goodwill a one-page printed receipt. Each receipt stated that Goodwill had received items in one or more of the following categories: clothing, shoes, media, furniture, or household items. The receipts did not further describe any of the items and did not indicate how many

[*4] items in any category were received. Nor did the receipts include any indication as to the items' condition. The receipts did state: "Goodwill does not return goods or services in exchange for donations of property."

At trial petitioners produced a spreadsheet generated by the TurboTax "ItsDeductible" program. This spreadsheet listed the types of items petitioners allegedly delivered to Goodwill on each of the trips (e.g., "boy's socks," "coffee cups," or "men's shirts"), the number of items of each type allegedly delivered, and the "quality" of each item. For every one of the 20,000 items, the quality is listed as "high." This spreadsheet was not prepared contemporaneously with the alleged gifts, and petitioners supplied no contemporaneous records to support the entries on this spreadsheet. We did not find petitioners' testimony on these points credible.

For each of the trips petitioners' spreadsheet shows a total dollar value for all items allegedly delivered on that trip. These dollar values range from a low of $830 to a high of $14,999. But the spreadsheet does not show a dollar value for any individual item. There is no credible evidence in the record to establish the fair market value of any of the 20,000 individual items. Petitioners likewise supplied no evidence to establish their cost basis in any of these items.

[*5]   Petitioners included in their post-trial brief a new spreadsheet that linked purported dollar values to the individual items.  There is no evidence to establish how petitioners determined these supposed dollar values.  We will use these purported dollar values for the sole purpose of estimating how similar items of property might be "aggregated" for charitable contribution purposes:

| Category | Amount |
| --- | --- |
| Clothing and accessories | $71,434 |
| Books/music | 25,026 |
| Furniture | 23,370 |
| Toys/gaming | 9,719 |
| Bedding/linens | 4,840 |
| Kitchen items | 3,079 |
| Electronic equipment | 2,960 |
| Baby items | 2,136 |
| Lawn/patio | 1,485 |
| Sporting goods | 810 |
| Health/beauty | 593 |
| Pet supplies | 443 |
| Luggage | 378 |
| Tools | 189 |
| Musical instruments | 149 |
| Total | 146,611 |

Petitioners claimed large deductions for charitable contributions of property, not only for 2011 but also for years before and after 2011.  For 2007-2010 they claimed deductions in the aggregate amount of $292,143 for noncash charitable contributions.  For 2012-2013 they claimed deductions in the aggregate amount of

[*6] $104,970 for noncash charitable contributions. Petitioners testified on cross-examination that the items they allegedly donated to Goodwill in these years were generally similar to the types of items they allegedly donated during 2011.

The IRS issued petitioners a timely notice of deficiency for 2011 that disallowed for lack of substantiation $145,000 of their claimed deduction. The IRS also determined an accuracy-related penalty. Petitioners timely sought redetermination in this Court.[3]

OPINION

I. Burden of Proof

The IRS' determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace; taxpayers must demonstrate their entitlement to deductions allowed by the Code and substantiate the amounts of claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. In certain circumstances the burden of proof on factual issues may shift to respondent. See sec. 7491(a). Petitioners have not provided "credible

---

[3]Petitioners filed their petition as a small tax case. See sec. 7463(a); Rule 171. By order dated January 18, 2017, we removed the "S" designation.

**[*7]** evidence" on the relevant factual issues, and they have not "maintained all records" required by the Code. See id. para. (1), (2)(B). The burden of proof thus remains on them.

## II.     Charitable Contributions

### A.     Statutory Framework

Section 170 allows as a deduction any contribution made within the taxable year to a charitable organization. Sec. 170(a)(1), (c). Such deductions are allowable "only if verified under regulations prescribed by the Secretary." Sec. 170(a); see sec. 1.170A-13, Income Tax Regs. The nature of the required substantiation depends on the size of the contribution and on whether it is a gift of cash or property.

For all contributions of property, the taxpayer must maintain reliable written records with respect to each item donated. These records must include the name of the donee, the date and location of the contribution, and a description of the property "in detail reasonable under the circumstances (including the value of the property)." Sec. 1.170A-13(b)(2)(ii)(A)-(C), Income Tax Regs. The taxpayer must also maintain records to establish "the fair market value of the property at the time the contribution was made * * * [and] the method utilized in determining the fair market value." Id. subdiv. (ii)(D).

**[\*8]**   For all contributions valued at $250 or more, the taxpayer must obtain a "contemporaneous written acknowledgment" (CWA) from the donee.  Sec. 170(f)(8).  The CWA must include (among other things) "a description (but not value) of any property other than cash contributed."  Id. subpara. (B)(i).  In the absence of a CWA meeting the statute's requirements, "[n]o deduction shall be allowed."  Id. subpara. (A).

Additional substantiation requirements are imposed for contributions of property with a claimed value exceeding $500.  Sec. 170(f)(11)(B).  Still more rigorous substantiation requirements are imposed for contributions of property with a claimed value exceeding $5,000.  Id. subpara. (C).  "Similar items of property" must be aggregated in determining whether gifts exceed the $500 and $5,000 thresholds.  See id. subpara. (F) ("For purposes of determining thresholds under this paragraph, property and all similar items of property donated to 1 or more donees shall be treated as 1 property.").  The term "similar items of property" is defined to mean "property of the same generic category or type," such as clothing, jewelry, furniture, electronic equipment, household appliances, toys, or kitchenware.  Sec. 1.170A-13(c)(7)(iii), Income Tax Regs.; see Kunkel v. Commissioner, T.C. Memo. 2015-71, 109 T.C.M. (CCH) 1379, 1380; Smith v. Commissioner, T.C. Memo. 2014-203, 108 T.C.M. (CCH) 384, 386.

**[*9]** For contributions of property valued in excess of $500, the taxpayer must include with his return "a description of such property and such other information as the Secretary may require." Sec. 170(f)(11)(B). The Secretary has prescribed regulations requiring that the taxpayer maintain records establishing "[t]he manner of acquisition" of the property (e.g., by purchase, gift, or inheritance), the approximate date of the property's acquisition, and the cost or adjusted basis of the property. Sec. 1.170A-13(b)(3)(i), Income Tax Regs.; see Gaerttner v. Commissioner, T.C. Memo. 2012-43, 103 T.C.M. (CCH) 1223, 1226.

For contributions of property (other than publicly traded securities) or similar items of property valued in excess of $5,000, the taxpayer must "obtain[] a qualified appraisal of such property." Sec. 170(f)(11)(C). He must also attach to his return a fully completed "appraisal summary." See sec. 1.170A-13(c)(2)(i)(B), Income Tax Regs. The IRS has prescribed Form 8283 to be used as the "appraisal summary." Costello v. Commissioner, T.C. Memo. 2015-87, 109 T.C.M. (CCH) 1441, 1445.

B.    Analysis

Petitioners contend that they donated to Goodwill during 2011 more than 20,000 items of property with a fair market value of at least $145,000. They have failed woefully to satisfy the substantiation requirements for these alleged gifts.

**[\*10]**     1.     Contributions Generally

For all contributions, a taxpayer must maintain reliable records that include (among other things) a description of the property "in detail reasonable under the circumstances (including the value of the property)."  Sec. 1.170A-13(b)(2)(ii), Income Tax Regs.  The taxpayer must also maintain records to establish "the fair market value of the property at the time the contribution was made \* \* \* [and] the method utilized in determining the fair market value."  Id. subdiv. (ii)(D).

Petitioners did not maintain contemporaneous records establishing any of these facts.  We did not find their subsequently generated TurboTax spreadsheet credible.  In any event, that spreadsheet did not show an individual value for any of the items, only an aggregate figure for the thousands of items allegedly delivered to Goodwill on a particular trip.  Many of those aggregate dollar figures are suspect on their face.[4]

        2.     Contributions of $250 or More

 On each trip to Goodwill petitioners contributed property with an alleged value ranging from $830 to $14,999.  They were thus required to secure CWAs for

---

[4]On four occasions petitioners allegedly delivered to Goodwill items with an aggregate value of exactly $5,000.  On three occasions they allegedly delivered items with an aggregate value of $5,008.  On two occasions a week apart they allegedly delivered items with an aggregate value of $4,999.

[*11] these gifts. Sec. 170(f)(8)(A). A CWA must include (among other things) "a description (but not value) of any property other than cash contributed" and a statement as to whether "the donee provided any goods or services in exchange for the gift." Id. subpara. (B).

The receipts supplied by Goodwill satisfy the latter requirement but not the former. The receipts do not describe the specific items contributed or indicate the number of items of any particular type. Rather, they simply state that the items delivered (allegedly numbering in the thousands) fell into one or more of five general categories: clothing, shoes, media, furniture, or household items. This is not an adequate "description * * * of any property * * * contributed" for purposes of section 170(f)(8)(B).

### 3. Contributions Exceeding $500

"Similar items of property" must be aggregated for purposes of determining whether a contribution exceeds the $500 threshold. Id. para. (10)(F). Petitioners' failure to maintain adequate records makes it impossible to perform this exercise precisely. On the basis of admissions in petitioners' post-trial brief, however, we estimate that they made alleged contributions aggregating in excess of $500 for 11 categories of items. See supra p. 5. These categories cover 99.2% of the total alleged contributions by value.

[*12] For noncash contributions in excess of $500, taxpayers are required to maintain reliable written records showing: (1) the approximate date the property was acquired and the manner of its acquisition; (2) a description of the property in detail reasonable under the circumstances; (3) the cost or other basis of the property; (4) the fair market value of the property at the time it was contributed; and (5) the method used in determining its fair market value. Sec. 170(f)(11)(B); sec. 1.170A-13(b)(2)(ii)(C) and (D), (3)(i)(A) and (B), Income Tax Regs. Petitioners kept no contemporaneous records to establish any of these things.

No deduction is allowed for "any contribution of clothing or a household item" unless such property is "in good used condition or better." Sec. 170(f)(16)(A). "The term 'household items' includes furniture, furnishings, electronics, appliances, linens, and other similar items." Id. subpara. (D)(i). Most of the items petitioners allegedly donated consisted of clothing, furniture, electronic appliances, linens, and other household items. See supra pp. 3-5. Although petitioners' TurboTax spreadsheet stated that the condition of all 20,000 items was "high," they offered no credible evidence to support this assertion. For all these

**[\*13]** reasons, petitioners have not satisfied the substantiation requirements for donations of property valued in excess of $500.[5]

### 4.      Contributions Exceeding $5,000

"Similar items of property" must be aggregated for purposes of determining whether a contribution exceeds the $5,000 threshold.  Sec. 170(f)(10)(F).  Petitioners' failure to maintain adequate records makes it impossible to perform this exercise precisely.  On the basis of admissions in petitioners' post-trial brief, however, we estimate that they made alleged contributions aggregating in excess of $5,000 for four categories of items.  See supra p. 5.  These categories cover 88.3% of the total alleged contributions by value.

For contributions valued in excess of $5,000, the taxpayer must satisfy the substantiation requirements discussed previously and must also:  (1) obtain a "qualified appraisal" of the items and (2) attach to his tax return a fully completed appraisal summary on Form 8283, Noncash Charitable Contributions.  See sec. 170(f)(11)(C); sec. 1.170A-13(c)(2), Income Tax Regs.  Petitioners did not obtain an appraisal of any kind, much less a qualified appraisal, for any of the items.  Al-

---

[5]The requirement that the taxpayer establish that property was "in good used condition or better" does not apply if he includes with his return "a qualified appraisal with respect to the property."  Sec. 170(f)(16)(C).  Petitioners did not obtain or include with their return a "qualified appraisal."  See infra p. 13.

[*14] though they attached to their 2011 return several Forms 8283, these forms were not executed by the donee organization or by an appraiser, as is required for contributions valued in excess of $5,000.

In sum, petitioners have not satisfied any of the substantiation requirements that apply to their alleged charitable gifts. We thus sustain the IRS' determination that $145,000 of their claimed $145,250 deduction must be disallowed.

III.    Accuracy-Related Penalty

The Code imposes a 20% penalty upon the portion of any underpayment attributable to (among other things) negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the tax laws, and "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Negligence also includes any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.; see Olive v. Commissioner, 139 T.C. 19, 43 (2012).

With respect to an individual taxpayer's liability for a penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that imposition of a penalty is appropriate. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer

**[\*15]** bears the burden of proving that the IRS' determination is incorrect. Ibid.; see Rule 142(a); Welch v. Helvering, 290 U.S. at 115. We find that respondent has satisfied his burden of production by showing that petitioners failed to keep adequate records. See sec. 1.6662-3(b)(1), Income Tax Regs.[6]

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and that he acted in good faith with respect to, the underpayment. The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Ibid.

---

[6]Petitioners did not allege, in their petition or at trial or in their post-trial brief, that the accuracy-related penalty at issue was not "personally approved (in writing) by the immediate supervisor of the individual making \* \* \* [the penalty] determination." See sec. 6751(b)(1). That issue is therefore deemed conceded. See Rule 34(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."); cf. Lloyd v. Commissioner, T.C. Memo. 2017-60, at \*7 n.3 (deeming similarly conceded any section 6751(b)(1) challenge to assessable penalties in a section 6330 levy case).

[*16] Petitioners' assertion that they donated more than 20,000 items to Goodwill in a single year is implausible on its face and was unsupported by any credible testimony or other reliable evidence. They kept no contemporaneous records establishing the number of items actually donated or the values of such items. They do not contend that they relied on the advice of a competent tax professional in claiming a charitable contribution deduction of $145,250. We find that petitioners were negligent in preparing their 2011 return and that no portion of their 2011 underpayment met the "reasonable cause" exception. We will accordingly sustain respondent's imposition of the section 6662(a) penalty.

To reflect the foregoing,

Decision will be entered

for respondent.